# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2002-AN-01492-SCT

*IN THE MATTER OF THE CONTRACTION,*
*EXCLUSION AND DEANNEXATION OF CERTAIN*
*AREAS FROM THE CORPORATE BOUNDARIES*
*OF THE CITY OF GRENADA, MISSISSIPPI: CITY*
*OF GRENADA*

*v.*

*FRANK MARASCALCO, MIKE HYNEMAN, BILL*
*WILLIAMS AND JOSEPH LEE*

| | |
|---|---|
| DATE OF JUDGMENT: | 8/6/2002 |
| TRIAL JUDGE: | HON. PERCY L. LYNCHARD, JR. |
| COURT FROM WHICH APPEALED: | GRENADA COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | ELLIS TURNAGE |
| | MARY A. BROWN |
| ATTORNEY FOR APPELLEES: | DAVID D. O'DONNELL |
| NATURE OF THE CASE: | CIVIL - MUNICIPAL BOUNDARIES & ANNEXATION |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND RENDERED IN PART - 07/01/2004 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

## CONSOLIDATED WITH
## NO. 2002-CA-01949-SCT

*IN THE MATTER OF THE CONTRACTION,*
*EXCLUSION AND DEANNEXATION OF CERTAIN*
*AREAS FROM THE CORPORATE BOUNDARIES*
*OF THE CITY OF GRENADA, MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/20/2002 |
| TRIAL JUDGE: | HON. PERCY L. LYNCHARD, JR. |
| COURT FROM WHICH APPEALED: | GRENADA COUNTY CHANCERY COURT |

ATTORNEYS FOR APPELLANT: MARY A. BROWN
 ELLIS TURNAGE

ATTORNEY FOR APPELLEES: DAVID D. O'DONNELL
NATURE OF THE CASE: CIVIL - MUNICIPAL BOUNDARIES &
 ANNEXATION
DISPOSITION: AFFIRMED IN PART; REVERSED AND
 RENDERED IN PART - 07/01/2004

MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**COBB, PRESIDING JUSTICE, FOR THE COURT:**

¶1. This case of first impression consists of two consolidated appeals arising from a deannexation controversy in Grenada County Chancery Court. In the first appeal, the chancery court denied the City of Grenada's request to deannex certain areas from the City. The chancery court further ordered the City to proceed with litigation under the Voting Rights Act in a specified manner. The City appeals this decision, submitting the following issues:

> **I. WHETHER THE CHANCELLOR APPLIED AN INCORRECT LEGAL STANDARD TO DENY THE DEANNEXATION ORDINANCE ENACTED TO REMEDY THE UNITED STATES ATTORNEY GENERAL'S SECTION 5 OBJECTIONS?**
>
> **II. WHETHER THE CHANCELLOR'S FINAL DECREE DIRECTING GRENADA TO FILE A SUPPLEMENTAL SECTION 5 SUBMISSION DENIES DUE PROCESS OF LAW?**

¶2. Four Grenada city councilmen subsequently refused to proceed with litigation under the Voting Rights Act as ordered by the chancellor. The chancellor held the councilmen in contempt for their refusal. The City also appeals this decision, submitting the following issues:

> **III. WHETHER THE CHANCERY COURT ERRED WHEN IT HELD GRENADA IN CONTEMPT FOR NOT SUPPLEMENTING ITS PRE-CLEARANCE REQUEST?**

2

¶3.     After due consideration we affirm the chancellor's decision on the City's request for deannexation, and affirm the judgment of contempt. We further find that the chancellor erred in ordering the City to proceed with litigation under the Voting Rights Act, and reverse and render this portion of the chancery court judgment.

**FACTS**

¶4.     Our review of these consolidated appeals begins with the annexation of certain areas by the City of Grenada in 1993, which was subsequently approved by the chancery court in 1995 and affirmed without opinion by this Court. *See In the Matter of the Extension of the Boundaries of the City of Grenada, Mississippi*, 669 So.2d 85 (Miss. 1996). It is difficult to find an official determination in the record before us of how many voters of what race were added by this annexation. A study based on the 1990 census, and submitted to the Grenada City Council before its vote on annexation showed a 1990 population for Grenada of 10,864, 5,462 (50.3%) white and 5,402 (49.7%) non-white. It was reported that annexation would add 4,021 persons to the City, 2,447 white and 1,574 non-white. This would result in a total population for Grenada of 14,885, 7,909 ( 53.1%) white, and 6,976 (46.9%) non-white. A subsequent recalculation subtracted 24 white persons from the 2,447 figure.

¶5.     Because the annexation impacted Grenada's voter rolls and resulted in redistricting of the seven city wards, it was necessary to seek federal preclearance of the changes as required under Section 5 of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973c. The City submitted the annexation to the United States Attorney General (USAG) in April 1998, with three of the City's seven wards containing a majority black population. In August 1998 the USAG objected to the annexation, finding that it had both a discriminatory purpose and effect.

¶6. On January 3, 2000, the City of Grenada resubmitted the 1993 annexation ordinance with a revised redistricting ward plan. This time, of the seven city wards, four had majority black populations. By letter dated March 3, 2000, the USAG appeared to recognize that the annexation no longer had a retrogressive effect:

> While the proposed redistricting plan appears to fairly reflect black voting strength in the post-annexation city by providing four council districts in which minority voters would have a fair opportunity to elect candidates of their choice, this would only remedy the annexation's retrogressive effect, not its discriminatory purpose.

¶7. The USAG further stated:

> Because the basis for our 1998 objection to the city's annexation was that the city intended the result that would have been achieved through the annexation, i.e., a reduction in minority voting strength, our objection clearly satisfies the standard articulated in [*Reno v.*] *Bossier* [*Parish School Board*, 120 S.Ct. 866 (2000)]. Thus, although the Supreme Court has clarified the scope of the Section 5 purpose analysis, in the case of Grenada's annexation, this clarification provides no basis for withdrawing our objection.

> Nor have you provided any new factual information that would allow us to conclude that the annexation was not adopted for the prohibited purpose of reducing minority voting strength within the city and defining the city's boundaries so as to exclude certain areas containing minority persons wishing to become voters in Grenada. Not only has the city failed to take any steps to address the concerns we raised in our objection letter regarding the process and sequence of events leading to the adoption of the objected-to annexation or to provide any new facts that would indicate that the objected to annexation was adopted for "objectively verifiable, legitimate reasons," *see City of Richmond v. United States*, 422 U.S. 358, 375 (1975), it has done nothing to address its racially exclusionary annexation procedures.

Thus, USAG declined to withdraw the objection to the annexation.

¶8. In response, the City Council on February 12, 2001, adopted a new ordinance which provided for deannexation of five separate and non-contiguous parcels of land from the corporate limits of Grenada. These parcels were all part of the area which was annexed in 1993. Under the 2000 census data, a total of 1285 persons would be removed from the Grenada city limits as part of the deannexation, 1160 white

4

and 125 African-American. The Complaint for ratification, approval and confirmation of the deannexation was filed by the City of Grenada on November 15, 2001. A Response and Objection to the Complaint was filed in February 2002 by Frank Marascalco, Mike Hyneman, Bill Williams and Joseph Lee. The objectors alleged that the complaint was not supported by adequate evidence and constituted "a patent racial gerrymander." The objectors also alleged that there were other avenues of responding to the USAG's objection to the annexation.

¶9.     A hearing was held before the chancery court on the deannexation on June 4-6, 2002. On July 24, 2002, Chancellor Percy L. Lynchard, Jr., entered his opinion finding that the proposed deannexation was unreasonable and directed that the city council immediately supplement the preclearance submission to fully and properly address the objections imposed by the USAG to the original annexation. Moreover, the chancery court ordered Grenada to disclose to the USAG a study that showed that certain areas were excluded from the 1993 annexation because of cost and not because of race. Judge Lynchard entered his Judgment and Decree Denying the Contraction, Exclusion and De-Annexation of Certain Areas from the Corporate Boundaries of the City of Grenada, Mississippi on August 7, 2002. The City of Grenada filed its notice of appeal on August 30, 2002. This is appeal no. 2002-AN-01492.

¶10.    The City did not move for stay pending appeal and did not comply with the portion of the chancery court's order which required it to supplement its Section 5 preclearance submission. The objectors Frank Marascalco et al. filed a motion for contempt on September 26, 2002. After hearings held on November 18, 2002, the chancery court found the City of Grenada and Councilmen Lewis Johnson, Calvin Neely, J.B. Flowers, and Earnest Hargrove in contempt, fining them each $100 per day beginning on November 18 and continuing until they were no longer in contempt. A show cause hearing was set for November 21, 2002. The objectors were awarded their attorney's fees. The City of Grenada filed its notice of appeal

5

on November 21, 2002. On November 21, the chancery court entered a second order, once again finding the four councilmen in contempt and remanding them to the custody of the Grenada County Sheriff's Department until the contempt had been purged. The order further found that enforcement of the contempt decree would be stayed if this Court entered a stay as to the August 7, 2002 judgment. By order dated November 22, 2002, this Court entered a stay. This is appeal no. 2002-CA-01949. The appeals were consolidated on July 17, 2003, by order of this Court.

## DISCUSSION

### I. Deannexation.

¶11. This Court has provided the following standard of review:

> This Court's standard of review for annexation is very limited. The Court can only reverse the chancery court's findings as to the reasonableness of an annexation if the chancellor's decision is manifestly wrong and is not supported by substantial and credible evidence. *In re Enlargement and Extension of Mun. Boundaries of City of Madison v. City of Madison,* 650 So.2d 490, 494 (Miss.1995). We also stated "[w]here there is conflicting, credible evidence, we defer to the findings below." *Bassett v. Town of Taylorsville,* 542 So.2d 918, 921 (Miss.1989). "Findings of fact made in the context of conflicting, credible evidence may not be disturbed unless this Court can say that from all the evidence that such findings are manifestly wrong, given the weight of the evidence." *Id.* at 921. "We only reverse where the Chancery Court has employed erroneous legal standards or where we are left with a firm and definite conviction that a mistake has been made." *Id.*

*In Re Extension of Boundaries of City of Hattiesburg*, 840 So.2d 69 (Miss. 2003). This standard also applies to deannexation cases. *See **In Re Exclusion of Certain Territory from the City of Jackson***, 698 So.2d 490, 492-93 (Miss. 1997).

¶12. Miss. Code Ann. § 21-1-27 states:

> The limits and boundaries of existing cities, towns and villages shall remain as now established until altered in the manner hereinafter provided. When any municipality shall desire to enlarge or contract the boundaries thereof by adding thereto adjacent unincorporated territory or excluding therefrom any part of the incorporated territory of

6

such municipality, the governing authorities of such municipality shall pass an ordinance defining with certainty the territory proposed to be included in or excluded from the corporate limits, and also defining the entire boundary as changed. In the event the municipality desires to enlarge such boundaries, such ordinance shall in general terms describe the proposed improvements to be made in the annexed territory, the manner and extent of such improvements, and the approximate time within which such improvements are to be made; such ordinance shall also contain a statement of the municipal or public services which such municipality proposes to render in such annexed territory. In the event the municipality shall desire to contract its boundaries, such ordinance shall contain a statement of the reasons for such contraction and a statement showing whereby the public convenience and necessity would be served thereby.

¶13.    In the case of *In Re Exclusion of Certain Territory from Jackson*, 698 So.2d 490, 492 (Miss. 1997), this Court affirmed that the same standards would be applied in deannexation cases as in annexation cases:

> In 1950, the Mississippi Legislature enacted Miss. Code Ann. §§§§ 21-1-45 and 21-1-47 (1990) to provide the statutory method for the annexation or deannexation of territory from a municipality. Neither statute has been amended since enactment. Miss.Code Ann. §§ 21-1-47 clearly states that:
>
>> ... all of the proceedings of this chapter with regard to proceedings in the chancery court upon petitions for the creation, enlargement, and contraction of municipalities shall apply in like manner thereto....
>
> *Id.* Therefore, this Court is required to apply the standards set forth for the annexation of territory to a municipality the same to a deannexation case as it would to an annexation case.
>
> This Court has addressed deannexation of territory from a municipality on only three occasions. *See Marshall v. Mayor and Board of Selectmen of McComb City,* 251 Miss. 750, 171 So.2d 347, *cert. denied,* 382 U.S. 836, 86 S.Ct. 83, 15 L.Ed.2d 79 (1965); *Wheat v. Poplarville,* 149 Miss. 424, 115 So. 559 (1928); *Thomas v. Long Beach*, 111 Miss. 329, 71 So. 570 (1916). *Marshall* addressed a city's attempt to deannex territory which had been annexed by a previous administration. *Wheat* and *Thomas* both addressed a situation similar to the action *sub judice.* In *Wheat* and *Thomas,* residents from an annexed territory petitioned to be deannexed from the respective municipalities. In both cases this Court allowed the deannexation. In all three cases, this Court applied what appears to be a forerunner of today's modern twelve part indicia of reasonableness.

¶14.    These twelve indicia were recently examined by this Court:

(1) the municipality's need for expansion, (2) whether the area sought to be annexed is reasonably within a path of growth of the city, (3) the potential health hazards from sewage and waste disposal in the annexed areas, (4) the municipality's financial ability to make the improvements and furnish municipal services promised, (5) the need for zoning and overall planning in the area, (6) the need for municipal services in the area sought to be annexed, (7) whether there are natural barriers between the city and the proposed annexation area, (8) the past performance and time element involved in the city's provision of services to its present residents, (9) the impact (economic or otherwise) of the annexation upon those who live in or own property in the area proposed for annexation, (10) the impact of the annexation upon the voting strength of protected minority groups, (11) whether the property owners and other inhabitants of the areas sought to be annexed have in the past, and in the foreseeable future unless annexed will, because of their reasonable proximity to the corporate limits of the municipality, enjoy the (economic and social) benefits of proximity to the municipality without paying their fair share of taxes, and (12) any other factors that may suggest reasonableness, vel non.

*In Re Extension of Boundaries of City of Hattiesburg*, 840 So.2d 69, 82 (Miss. 2003).

¶15.    In this case the City of Grenada presented evidence on one issue, the inability to obtain preclearance from the USAG as to the 1993 annexation. The City argued that its most reasonable method of dealing with the USAG's continuing objection to the 1993 annexation because of its discriminatory purpose was to remove approximately 1100 white persons from the city limits of Grenada.

¶16.    The objectors produced evidence on all twelve of the indicia of reasonableness. Their evidence on the first eleven was unopposed. On the twelfth, the objectors argued that the census data from 1997 relied on by the USAG was flawed and the City should have made the USAG aware of this. The objectors argued that the City had included every area of black population in the 1993 annexation that could reasonably served and not place a financial burden on the existing residents of the city, and this should have been emphasized to the USAG. The objectors argued that black population growth was occurring in the proposed deannexation area. The objectors argued that the conclusions of the USAG were incorrect, or

8

based on flawed data, and that the City should have responded to these objections and not with the drastic remedy of deannexation.

¶17. As to the first eleven indicia, the chancellor found that the proposed deannexation area was clearly in the path of growth of the City of Grenada. In addition to this growth, the chancellor found that Grenada had made significant investments in the infrastructure of the proposed area. The chancellor found that deannexation would reduce the tax revenues collected by the City without a reduction in costs associated with the provision of municipal services in the proposed area. The chancellor found that the lack of any zoning ordinances, building codes and sewer ordinances would be detrimental to future and existing development in the area. The chancellor found that the City had provided extensive police and fire protection, emergency services and garbage pickup for the area. The chancellor found that a five-year facilities plan, involving road construction, sewerage, street lighting and water lines, had almost been completed in the proposed area. Because of these sewer systems, there was little evidence to indicate potential health hazards in the propose area. The chancellor found that there were no natural or manmade barriers between the City and the proposed area. The chancellor found that commercial and residential development would be "greatly inhibited" by the deannexation. The chancellor found that persons in the deannexed area would enjoy some benefits of city services without paying their fair share of taxes.

¶18. The final indicium is the only one for which the City presented evidence. We include the entirety of the chancellor's finding on this indicium:

> It is in the basket of this indicia that the City of Grenada has placed all of its eggs. It cannot be reasonably argued that the plan of deannexation would dilute or inhibit the voting strengths of protected minority groups. However, this is but one indicia which the Court must consider.

> The Court notes with respect to this issue, that after having submitted the 1996 annexation to the Department of Justice for pre-clearance under Section 5 of the Voting Rights Act,

9

by letter dated August 17, 1998, the Department of Justice declined to grant pre-clearance based on the finding that the annexation and its subsequent redistricting plan had a retrogressive purpose and effect. Some 18 months later, the City resubmitted the annexation ordinance along with a revised seven ward redistricting plan to the Department of Justice for reconsideration under Section 5. The reason for this lengthy delay in responding to the Justice Department's concerns was not clear. However, on March 3, 2000, the Department of Justice again declined to grant Section 5 pre-clearance. Following this denial, the City abandoned their attempts to gain pre-clearance by way of response, and took the position that the only way that the Department of Justice would ever pre-clear their ward plan following the annexation was through deannexation of certain enumeration districts comprised almost wholly of white residents. This, the City argues, would satisfy the Department of Justice by cleansing the retrogressive effect and purpose of the previous annexation. On this fact alone, the Municipality of Grenada argues that the proposed deannexation application is reasonable and in the best interest of all its citizens and further is the only way in which pre-clearance may be had. With this the Court cannot agree.

From its March 3, 2000, letter, the office of the United States Attorney General indicates that the proposed redistricting of wards to enhance black voting strength in the post-annexation city remedies the annexation's retrogressive effect, but not its discriminatory purpose. Thus, the need to address the discriminatory purpose of the annexation is all that is now being required by the Department of Justice. There has been no evidence whatsoever presented that the city has addressed this discriminatory purpose to which Justice objects. In order to address this discriminatory purpose, evidence needs to be presented to the Department of Justice that although certain black population concentrations may be found outside the City of Grenada as annexed, their inclusion at this time would be cost prohibitive. Such was the testimony at this trial, but there is no evidence that same was submitted to the Department of Justice for pre-clearance. The lack of evidence with respect to the city's good faith effort to achieve pre-clearance strongly suggests that such an effort never materialized, the city more quickly seeking to racially cleanse the city by the elimination of white residents in an effort to impress the Attorney General and thereby gain pre-clearance. Such is reasonable only in a narrow view and mind.

¶19.    The City of Grenada cites numerous voting rights cases, such as *Perkins v. Matthews*, 400 U.S. 379, 91 S. Ct. 431, 27 L. Ed. 2d 476 (1971), where the Supreme Court held that changing boundary lines by annexation which enlarge a city's number of eligible voters amounted to a change which required preclearance under the Voting Rights Act. We have no argument with the numerous other cases cited by the City, or the points of law they support, only that none mandate the result the City requests in this appeal.

10

*See **Miller v. Johnson***, 515 U.S. 900, 115 S. Ct. 2475, 132 L. Ed. 762 (1995) (Georgia's congressional redistricting plan based on race to satisfy preclearance demands of Justice Department amounted to equal protection violation).

¶20.    The City then argues that, because this deannexation case is intertwined with a controversy arising under the Voting Rights Act, this factor trumps all others, renders our twelve factor annexation/deannexation analysis irrelevant, and is the only proof that need be submitted to win approval in such a case. The City also argues that the chancery court "overlooked the remedial nature of Grenada's deannexation ordinance, failed to apply the presumption of constitutionality accorded a legislative enactment, failed to grant the judicial deference ordinarily afforded to the legislative policies and choices embodied in the deannexation ordinance and failed to defer to the USAG's [United States Attorney General's] § 5 findings."

¶21.    We disagree. What the chancery court failed to do was consider the voting rights aspect of this case as some kind of super factor which was outcome determinative regardless of the remainder of the evidence. Nothing the City cites requires that this Court amend or eliminate its traditional annexation analysis in such a case. The voting rights aspect of this case was considered, as one factor, in this analysis. The City of Grenada, or any other municipality, may attempt to use deannexation, or any number of other remedies, in an effort to obtain preclearance in the voting rights context. We are not able to foresee, any better than any other person or entity involved in this case, what will convince the Justice Department to rescind its objection to the 1993 annexation. We may only apply established state law on the matter of deannexation absent some factual or legal proposition, or combination thereof, which would mandate otherwise. The mere presence of a voting rights controversy, as the sole impetus for a deannexation request, is not such a factor. The chancellor's finding on deannexation is affirmed.

11

¶22. In addition to its denial of the City of Grenada's request to deannex, the chancery court also ordered the City to

> immediately, without reasonable delay, supplement its Section 5 pre-clearance submission to the U.S. Department of Justice thereby finally addressing the matters raised by the Attorney General in reference to the retrogressive purpose objection interposed by that office and submit same to the United States Attorney General for pre-clearance under Section 5 of the Voting Rights Act of 1965. Further, said submission shall likewise be filed with this Court in this cause through the office of the Grenada County Chancery Clerk for review by this Court to ascertain compliance with these directives. Said submission both to this Court as well as to the office of the Attorney General of the United States shall be filed no later than 45 days from the date of the entry of the decree herein unless same be extended for good cause shown. Failure to comply with the time guidelines and directives herein may subject the offending party to the contempt powers of this Court upon proper application for same.

¶23. The City argues that the Objectors did not ask for this relief in their complaint or pleadings; and therefore, the chancery court cannot award it. The City cites *Diamond v. Diamond*, 403 So.2d 129 (Miss. 1981); *Miller v. Miller*, 512 So.2d 1286 (Miss. 1987); and *Crowe v. Crowe*, 641 So.2d 1100 (Miss. 1994), all cases involving whether an award of child support or alimony was proper when not requested by a party in pleadings. The Objectors cite *Redmond v. Cooper*, 151 Miss. 771, 119 So. 592 (1928), where this Court affirmed a finding by a chancellor that an instrument established certain property boundaries, when the only relief requested was that the instrument in question be cancelled. Where the evidence supported the chancellor's finding, it was affirmed.

¶24. This case may be distinguished in that the relief granted here by the chancellor would be improper regardless of the notice provided or clarity of the request by a party. Whether and how to initiate or to continue litigation is a matter of discretion for any governmental body. We have been provided with no statute, constitutional provision or case law whereby a trial judge may order a municipal body (1) to litigate

a certain matter (2) in any specified manner.  *See* **Hobson v. City of Vicksburg**, 848 So.2d 199 (Miss.

Ct. App. 2003).  This portion of the chancery court's decision is reversed and rendered.

## II.     Contempt.

¶25.     "Generally speaking, contempt matters are committed to the substantial discretion of the trial court

which, by institutional circumstance and both temporal and visual proximity, is infinitely more competent

to decide the matter than an appellate court. . . .  If the contempt is civil, the proper standard utilized for

review is the manifest error rule." **Dennis v. Dennis**, 824 So.2d 604, 608 (Miss. 2002).

¶26.     The City argues that the court's judgment on deannexation was automatically stayed by Miss. Code

Ann. § 21-1-33 (2001) when it filed its notice of appeal on August 30, 2002.  Section 21-1-33 states:

> If the chancellor finds from the evidence presented at such hearing that the proposed
> enlargement or contraction is reasonable and is required by the public convenience and
> necessity and, in the event of an enlargement of a municipality, that reasonable public and
> municipal services will be rendered in the annexed territory within a reasonable time, the
> chancellor shall enter a decree approving, ratifying and confirming the proposed
> enlargement or contraction, and describing the boundaries of the municipality as altered.
> In so doing the chancellor shall have the right and the power to modify the proposed
> enlargement or contraction by decreasing the territory to be included in or excluded from
> such municipality, as the case may be. If the chancellor shall find from the evidence that the
> proposed enlargement or contraction, as the case may be, is unreasonable and is not
> required by the public convenience and necessity, then he shall enter a decree denying such
> enlargement or contraction. **In any event, the decree of the chancellor shall
> become effective after the passage of ten days from the date thereof or, in
> event an appeal is taken therefrom, within ten days from the final
> determination of such appeal.** In any proceeding under this section the burden shall
> be upon the municipal authorities to show that the proposed enlargement or contraction is
> reasonable.

(emphasis added).  The City argues that the language stating that the chancellor's decree will become

effective ten days from the final determination of the appeal shows that the decree was stayed before then

and could not serve as a basis for a judgment of contempt.  The City never requested a stay pending its

appeal from the deannexation judgment.

¶27.     An appeal in an annexation case is governed by Miss. Code Ann. § 21-1-37, which states:

> If the municipality or any other interested person who was a party to the proceedings in the chancery court be aggrieved by the decree of the chancellor, then such municipality or other person may prosecute an appeal therefrom within the time and in the manner and with like effect as is provided in section 21-1-21 in the case of appeals from the decree of the chancellor with regard to the creation of a municipal corporation.

The Objectors argue that § 21-1-33 must be read in conjunction with § 21-1-21, which states:

> Any person interested in or aggrieved by the decree of the chancellor, and who was a party to the proceedings in the chancery court, may prosecute an appeal therefrom to the supreme court within ten days from the date of such decree by furnishing an appeal bond in the sum of five hundred dollars with two good and sufficient sureties, conditioned to pay all costs of the appeal in event the decree is affirmed. Such appeal bond shall be subject to the approval of the chancery clerk and shall operate as a supersedeas. If the decree of the chancellor be affirmed by the supreme court, then such decree shall go into effect after the passage of ten days from the date of the final judgment thereon, and the party or parties prosecuting such appeal and the sureties on their appeal bond shall be adjudged to pay all costs of such appeal.

¶28.     To construe § 21-1-33 as the City urges would render § 21-1-21 a nullity. Both statutes speak of the decree of the chancellor going into effect ten days after the appeal is decided. Supersedeas must be requested in the chancery court. The City did not do this and therefore the final judgment disallowing deannexation and ordering further action on behalf of the City was not stayed. The notice of appeal filed by the City did nothing to stay the judgment of the chancery court and prevent the City from being held in contempt.

¶29.     Finally, the City argues that the chancery court erred in holding the City and its four councilmen in contempt. The City bases its first argument on its notice of appeal filed under § 21-1-33, which we have already held to be without merit. The City next argues that the councilmen's conduct was not wilful and deliberate so that it could be labeled as contumacious, a term we have often used to define behavior sufficient to amount to contempt. *See **Dunaway v. Busbin***, 498 So.2d 1218 (Miss. 1986). The City

asks that this Court apply the lenient standard found in *Smith v. Smith*, 545 So.2d 725 (Miss. 1989), and *Walker v. Walker*, 453 So.2d 1030 (Miss. 1984). In both *Smith* and *Walker* this Court affirmed the chancery court's finding of no contempt, even though the party in question in each case disobeyed at least some of the terms of the chancery court's order.

¶30. The City argues that in this case the councilmen did not obey the chancellor's order because they believed that filing a notice of appeal would result in an automatic stay of the chancery court judgment under Miss. Code Ann. § 21-1-33. As we noted earlier, this was incorrect. Whatever leniency may have been allowed in the domestic cases cited above is not appropriate here. The chancellor was not manifestly in error in finding the councilmen in contempt. In addition, our finding that the chancellor's directive to the City to proceed with voting rights litigation was improper is also not an excuse for failure to comply with the judgment. *See Ladner v. Ladner*, 206 So.2d 620, 623 (Miss. 1968). The issue is without merit.

## CONCLUSION

¶31. The chancellor did not commit manifest error in denying the City of Grenada's deannexation request. The City's attempt to achieve preclearance of its 1993 annexation does not by itself alter our analysis of deannexation as a matter of state law. The chancellor also did not err in holding the city councilmen in contempt. Finally, the chancellor did err in ordering the City to proceed in litigating its case before the USAG in the manner prescribed. Therefore, the judgment of the chancery court is affirmed in part and reversed and rendered in part.

¶32. **AFFIRMED IN PART; REVERSED AND RENDERED IN PART.**

**SMITH, C.J., WALLER, P.J., CARLSON AND RANDOLPH, JJ., CONCUR. EASLEY, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION. DIAZ, GRAVES AND DICKINSON, JJ., NOT PARTICIPATING.**