# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2003-AN-00390-SCT

*IN THE MATTER OF THE ENLARGEMENT AND*
*EXTENSION OF THE MUNICIPAL BOUNDARIES*
*OF THE CITY OF JACKSON, MISSISSIPPI: CITY*
*OF JACKSON, MISSISSIPPI*
*AND MADISON COUNTY, MISSISSIPPI*

*v.*

*CITY OF RIDGELAND, MISSISSIPPI*


| | |
|---|---|
| DATE OF JUDGMENT: | 12/31/2002 |
| TRIAL JUDGE: | HON. GAIL BARNETT |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANTS: | DOUGLAS J. GUNN |
| | GREGORY K. DAVIS |
| | PATRICK M. RAND |
| ATTORNEY FOR APPELLEE: | JERRY L. MILLS |
| NATURE OF THE CASE: | CIVIL - MUNICIPAL BOUNDARIES & ANNEXATION |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND RENDERED IN PART; AND REMANDED-10/13/2005 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**SMITH, CHIEF JUSTICE, FOR THE COURT:**

¶1.     This is a tale of two cities. On one hand is the City of Ridgeland ("Ridgeland"), with a strong, vibrant history of residential and commercial development.  On the other hand is the City of Jackson ("Jackson"), with a recent history of decline and poor past performance.[1]  In

---

[1] *In re Exclusion of Certain Territory from the City of Jackson*, 698 So. 2d 490, 494-95 (Miss. 1997)(*City of Jackson II*); *Matter of Enlargement and Extension of the Mun.*

fact, Jackson is the only municipality in the state to have property (including property at issue here) deannexed by this Court.[2]

¶2.     The property involved in this case has been the subject of two cases previously decided by this Court. In *City of Jackson I*, 551 So. 2d at 861, Jackson, in 1989, annexed a slightly larger area than that involved in this case. Following this annexation, area residents filed a petition for deannexation from Jackson, which was denied by the trial court. However, in 1997, this Court reversed and rendered the trial court's decision by deannexing approximately 4 square miles of the annexed area from Jackson. *City of Jackson II*, 698 So. 2d at 490.

¶3.     Subsequent to this Court's ruling, in November of 1997, Jackson filed a new petition in the Chancery Court of Madison County seeking to re-annex the property that it had lost. Shortly thereafter, Ridgeland filed a petition to annex almost the entire acreage that was located in Madison County. Madison County filed a motion to intervene on February 18, 1998. On June 12, 1998, the Chancery Court of Madison County ordered the cases consolidated for trial.

¶4.     In its February 22, 2002 opinion, the trial court granted to Jackson only its request to annex the Richmond Grove area[3] and approved Ridgeland's request to annex all of the property contained in its petition. Jackson then filed a motion to reconsider or stay. On September 27,

---

*Boundaries of the City of Jackson*, 691 So. 2d 978, 984-85 (Miss. 1997); *Matter of the Boundaries of the City of Jackson*, 551 So. 2d 861, 867 (Miss. 1989)(*City of Jackson I*).

[2] *City of Jackson II*, 698 So. 2d at 494-95.

[3] The Richmond Grove area was not sought by the City of Ridgeland in the trial court. Based upon consideration of the indicia of reasonableness, including the stated desires of Richmond Grove citizens supporting annexation by the City of Jackson, the chancellor did not err in granting the City of Jackson's annexation request as to that area.

2002, the trial court granted Jackson's motion for reconsideration determining that the findings of fact and conclusions of law would remain unchanged. However, the court did grant Jackson the annexation of 220 Business Park, which is located in Madison County. Madison County and Ridgeland thereafter filed a motion to reconsider the removal of 220 Business Park from Ridgeland. The Final Order and Opinion in this case, entered January 2, 2003, awarded both 220 Business Park and the Richmond Grove area to Jackson and the remaining property to Ridgeland. This appeal followed with Madison County, on direct appeal, and Ridgeland, on cross-appeal, arguing that the chancellor erred when she awarded the 220 Business Park to Jackson. The City of Jackson also appeals arguing that the entire proposed annexation area ("PAA") should have been granted to Jackson.

## STATEMENT OF THE ISSUES

**I.      Whether the Chancellor Erred in Granting the City of Ridgeland the Majority of the Area it Sought to Annex.**

**II.     Whether the Chancellor Erred in Modifying Her Original Opinion to Allow the City of Jackson to Annex 220 Business Park.**

## STANDARD OF REVIEW

¶5.     "This Court's standard of review for annexation is very limited. The Court can only reverse the chancery court's findings as to the reasonableness of an annexation if the chancellor's decision is manifestly wrong and is not supported by substantial and credible evidence." *In re Contraction, Exclusion and Deannexation of City of Grenada*, 876 So. 2d 995, 999 (Miss. 2004). We will also defer to the findings below when there is conflicting,

credible evidence. *See id.* "We only reverse where the Chancery Court has employed erroneous legal standards or where we are left with a firm and definite conviction that a mistake has been made." *Id.* at 999-1000 (*quoting* **Bassett v. Town of Taylorsville**, 542 So. 2d 918, 921 (Miss. 1989)).

## DISCUSSION

**I.      Whether the Chancellor Erred in Granting the City of Ridgeland the Majority of the Area it Sought to Annex.**

¶6.      This Court has established a list of twelve non-exclusive factors - "indicia of reasonableness"- to guide chancellors in determining the reasonableness of a city's annexation request. ***In re Extension of Boundaries of City of Hattiesburg***, 840 So. 2d 69, 81 (Miss. 2003). The twelve indicia of reasonableness are:

> (1) the municipality's need for expansion;
> (2) whether the area sought to be annexed is reasonably within a path of growth of the city;
> (3) the potential health hazards from sewage and waste disposal in the annexed areas;
> (4) the municipality's financial ability to make the improvements and furnish municipal services promised;
> (5) the need for zoning and overall planning in the area;
> (6) the need for municipal services in the area sought to be annexed;
> (7) whether there are natural barriers between the city and the proposed annexation area;
> (8) the past performance and time element involved in the city's provision of services to its present residents;
> (9) the impact (economic or otherwise) of the annexation upon those who live in or own property in the area proposed for annexation;
> (10) the impact of the annexation upon the voting strength of protected minority groups;
> (11) whether the property owners and other inhabitants of the areas sought to be annexed have in the past, and in the foreseeable future unless annexed will, because of their reasonable proximity to the corporate limits of the municipality, enjoy the (economic and social) benefits of proximity to the municipality without paying their fair share of taxes; and

4

(12) any other factors that may suggest reasonableness, vel non.

*Id.* at 82-83. "This Court has held that the twelve factors 'are only indicia of reasonableness, not separate and distinct tests in and of themselves.'" *In re Extension of the Boundaries of The City of Winona*, 879 So. 2d 966, 972-73 (Miss. 2004) (*quoting* *In re Enlargement and Extension of Municipal Boundaries of City of Biloxi*, 744 So. 2d 270, 276 (Miss. 1999)). This Court stated in *Hattiesburg* that "fairness to all parties has always been the proper focus of our reasonableness inquiry. Thus, we hold that municipalities must demonstrate through plans and otherwise, that residents of annexed areas will receive something of value in return for their tax dollars in order to carry the burden of showing reasonableness." *Hattiesburg*, 840 So. 2d at 82. More importantly, "'[t]he chancellor must consider all [twelve] of these factors and determine whether under the totality of the circumstances the annexation is reasonable.'" *Id*.

¶7.     For reasons set forth below, we find that the chancellor's original opinion is correct and that the chancellor's findings in her Order and Supplemental Opinion are manifestly wrong. Therefore, Ridgeland must prevail on the proposed annexation area at issue.

**The Twelve Indicia of Reasonableness**

**1.  Need to expand**

¶8.     When determining whether a City has a reasonable need for expansion, the factors to be considered may include:

> (1) spillover development into the proposed annexation area; (2) the City's internal growth; (3) the City's population growth; (4) the City's need for development land; (5) the need for planning in the annexation area; (6) increased traffic counts; (7) the need to maintain and expand the City's tax base; (8) limitations due to geography and surrounding cities; (9) remaining vacant land

5

within the municipality; (10) environmental influences; (11) the city's need to exercise control over the proposed annexation area; and (12) increased new building permit.

*Winona*, 870 So. 2d at 974.

¶9. While it is true that both cities have between 25% and 27% land available for development, in Jackson that percentage constitutes 40 square miles, or 2.3 times the entire land mass area of Ridgeland. Any comparison without more facts is misleading, especially in view of the chancellor's original findings on this subject. Originally, the chancellor stated:

> Jackson presented no evidence as to the amount of vacant land available in its borders. Ridgeland however, produced proof that in 1990, 36.5% of Jackson was vacant, or over 40 square miles of vacant land; Jackson had decreased in population from 202,000 in 1998 to 188,419 in 2003. Ridgeland had gained 9,000 residents during the same time period. Ridgeland was 61.8% built-out; the rate at which Ridgeland is developing indicates a need for expansion. A major indicator of a city in decline is the low number of new residential subdivision lots platted. Only 34 residential purchases were made in northwest Jackson during the year 1998 and only 691 new residential lots were platted in the entire City of Jackson from January 1, 1990, until August 31, 2000. In the City of Ridgeland, the population is up, residential building permits are up, commercial building permits are up, and new streets are being constructed to accommodate internal growth. Ridgeland housing units increased by 3,789 while Jackson housing units decreased by 3,696. All indicators of growth reveal Ridgeland as the City growing internally.

¶10. We hold the chancellor's finding is correct, in that Ridgeland has a far greater need to expand its territorial borders than the City of Jackson. Therefore, we find this factor favors annexation by Ridgeland.

## 2. Path of growth

¶11. A city need only show that the areas to be annexed are in its path of growth. The path of growth does not have to be the primary or most urgent path. *See City of Hattiesburg*, 840 So. 2d at 86-87. A number of factors may be considered in determining whether the path of

6

growth is reasonable including, but not limited to "(1) spillover development in annexation area; (2) the annexation area immediately adjacent to City; (3) limited area available for expansion; (4) interconnection by transportation corridors; (5) increased urban development in annexation area; (6) geography; and (7) subdivision development." *City of Winona*, 879 So. 2d at 977. The evidence revealed that the proposed annexation area was in the path of growth of both Ridgeland and Jackson. The area is immediately adjacent to both cities in that the PAA lies to the west of Ridgeland and to the north of Jackson. Both cities are interconnected by transportation corridors to the annexation area: Jackson by Livingston Road, Hanging Moss Road, and I-220 and Ridgeland by Highland Colony Parkway, Old Agency Road, and I-220.

¶12.    However, unlike Jackson, Ridgeland has only one path of growth. Ridgeland is blocked to the north by the City of Madison, to the east by the Barnett Reservoir, and to the south by the City of Jackson. Ridgeland's only path of growth is to the west, whereas Jackson has several alternate paths of growth other than the area at issue. There is also evidence that a new subdivision in Ridgeland has commenced development that would extend into the proposed area. Furthermore, in her original opinion, the chancellor quoted from this Court's prior opinion in finding that the path of growth favored Ridgeland over Jackson. The Chancellor stated "Jackson has not been cut off from further growth. The [c]ity can still grow to the north, southeast, south, and southwest." *Extension of the Boundaries of the City of Ridgeland v City of Jackson*, 651 So. 2d 548, 563 (Miss. 1995).

¶13.    As to spillover growth, specifically with regard to the 220 Business Park, the chancellor originally noted Jackson's investment in the water and sewer infrastructure in the business park. However, the chancellor also noted Ridgeland's investment in the Highland Colony

7

Parkway and found that "[t]he annexation areas may be in Jackson's **potential path of growth**, but it is clearly in Ridgeland's **active path of growth.**" (Emphasis added). The Chancellor's supplemental opinion noted Jackson's West County Line Road Expansion Project. However, this is a preliminary design project, prepared in 1998 and due to be completed in 2003. The record reflects that the first meeting regarding the preliminary design took place approximately two weeks prior to trial. Given Jackson's history of poor past performance, this proposed project (which is already behind schedule) should not have carried weight in the chancellor's revised opinion. This is especially true considering that at the time of argument in 2005 construction on the project had yet to commence. The more convincing proof is provided in the chancellor's original opinion. The chancellor stated:

> It becomes clear that spillover from Jackson is not now occurring. Echelon Business Park was being developed at the time Jackson annexed the area, which was ultimately approved in 1989. Additionally, thereto, the Lakeover Business Park was being developed. Each of these ventures failed to meet the potential anticipated by the City of Jackson when it first annexed this area. **Consequently, there has been no growth in northwest Jackson to spillover into the proposed annexation area.** Ridgeland and Madison County's **investment in Highland Colony Parkway has been the catalyst which is creating new development in the Ridgeland proposed annexation area. A review of both the historic and aerial photography clearly indicates that 'spillover' development has occurred from Ridgeland into the proposed annexation area.**

(Emphasis added). The undeniable facts indicate that the 220 Business Park was growing prior to Jackson's 1989 annexation. It abruptly stopped and did not commence growth again until the deannexation and westward spread of growth due to the Highland Colony Parkway project by Madison County and Ridgeland.

8

¶14.    Both cities established that the areas to be annexed are in their path of growth. However, the fact that Ridgeland has little area or direction in which to expand while Jackson has substantially vacant areas in which to expand justifies the chancellor's original finding that the annexation area is in Ridgeland's actual path of growth.  We find this factor favors annexation by Ridgeland.

### 3.  Potential health hazards

¶15.    This Court has itemized a number of factors to be applied when considering whether the potential health hazards are reasonable, which include    "(1) potential health hazards from sewage and waste disposal; (2) a large number of septic tanks in the area; (3) soil conditions which are not conducive to on-site septic systems; (4) open dumping of garbage; and (5) standing water and sewage." *City of Winona,* 879 So. 2d at 979.

¶16.    Neither city disputed the fact that the soil type in the area was unsuitable for septic tank usage.  The soil conditions in the area were described as having severe limitations for septic tank absorption.  Furthermore, municipal level sewer service and treatment is needed in the area because of drainage problems.  The chancellor found that the pertinent soils do not percolate well, creating a poor field for discharging septic tank effluent.  Evidence was also presented of health hazards from waste disposal in the area.

¶17.    While this factor favored annexation and the provision of city services, it did not favor one city over the other.

### 4.  Financial ability to make improvements and furnish municipal services

¶18.    Factors to consider when determining whether a municipality possesses reasonable financial ability for the annexation may include "(1) present financial condition of the

9

municipality; (2) sales tax revenue history; (3) recent equipment purchases; (4) the financial plan and department reports proposed for implementing and fiscally carrying out the annexation; (5) fund balances; (6) the City's bonding capacity; and (7) expected amount of revenue to be received from taxes in the annexed area." *Id.* at 980-81.

¶19. The then-Mayor and then-Assistant Chief Administrative Officer of the City of Jackson testified that Jackson had sufficient financial ability to provide the services and make improvements to the PAA in accordance with the facility and services plan adopted by Jackson. The Mayor and the Board of Aldermen of the City of Ridgeland also adopted a facility and services plan for the PAA to provide services and make improvements. Furthermore, Ridgeland presented credible evidence that it had the financial ability to make the improvements and provide services to the PAA. Specifically, Ridgeland showed its strong financial condition by introducing evidence that it had the **highest bond rating of any municipality in Mississippi**. Therefore, the chancellor's finding that this factor favors the City of Ridgeland is not clearly erroneous given concerns over the City of Jackson's "past performance of failing to furnish promised improvements to ... annexed areas." We find this factor favors annexation by Ridgeland.

### 5. Need for zoning and overall planning in the area

¶20. This Court has upheld annexations where a county already had an existing zoning ordinance, as well as when a municipality is without a zoning ordinance or urban planning. *See In re Enlargement and Extension of Corporate Boundaries of the Town of Mantachie*, 685 So. 2d 724, 728 (Miss. 1996); *City of Ridgeland*, 651 So. 2d at 559.

10

¶21.    The trial court found, and the parties agreed, that there is a need for zoning in the PAA. Jackson's zoning administrator testified to the strengths of Jackson's zoning ordinance. Madison County has continued to use the City of Jackson's zoning ordinance, despite the fact that the area was deannexed in September of 1997. As all parties agree that zoning is needed, this factor favors neither Jackson nor Ridgeland.

### 6. Need for municipal services in the area sought to be annexed

¶22.    Among the factors this Court considers regarding this indicium of reasonableness are:

> (1) requests for water and sewage services; (2) plan of the City to provide first response fire protection; (3) adequacy of existing fire protection; (4) plan of the City to provide police protection; (5) plan of the City to provide increased solid waste collection; (6) use of septic tanks in the proposed annexation area; and (7) population density.

*City of Winona*, 879 So. 2d at 984.

¶23.    Neither party disputes a need for municipal services in the PAA. In fact, Jackson has already spent over $5 million for water and sewer services within the PAA. Jackson has also provided water and sewer service to the 220 Business Park since 1985. While Jackson has supplied water and sewer to part of the PAA, testimony in the record indicates a question of water quality and sufficiency. Both Jackson and Ridgeland have proposed building a new fire station close to the PAA.

¶24.    This Court notes that Ridgeland's plan proposes adding 6 more police officers over a five-year period. By contrast, Jackson needs over 230 additional policemen to reach recommended levels of protection according to the Linder/Maple report. Jackson's then-Mayor testified that Jackson does not have enough police officers to meet the needs of Jackson residents. Then-Jackson Police Chief Bracy Coleman testified that Jackson already

11

has a problem with the amount of crime in the city and that the police department is understaffed. In 1998, for instance, Jackson was nationally ranked in the top ten of per capita homicides. All told, Jackson had already lost numerous residents and businesses because of the high crime rate within the city. Jackson's budget of roughly $28 million would require a dramatic increase of approximately $7 million to fund the additional officers.

¶25. In her opinion, the chancellor did not make a finding as to which party this factor supports. However, because Ridgeland plans to increase its police protection by six officers, whereas Jackson's ability to provide adequate police protection to PAA is in question, we find this factor favors annexation by Ridgeland.

### 7. Natural barriers

¶26. As noted by the chancellor, it is undisputed that no natural barriers exist between the PAA and either of the cities.

### 8. Past performance in the City's provision of services to its present residents

¶27. This Court evaluates this indicium by looking at the municipality's performance in previous annexations and whether it has provided promised services to its residents. *See **Poole v. City of Pearl***, 908 So. 2d 728, 741 (Miss. 2005). The chancellor found that both cities have a history of failing to meeting their five-year timetables in providing promised services to their annexed areas. However, the chancellor found Jackson's failure is far more aggravated. We agree.

12

¶28. Following the 1989 annexation of this area, Jackson's failure to provide promised services was evidenced by the fact that in 1997, when the property was deannexed, some of the services had still not been provided. Regarding the 1997 deannexation, this Court stated:

> The municipality is unable or unwilling to expend the necessary funds to provide the services and infrastructure promised within the area. This is clear in that no action has been taken toward providing sewer services in the area. In addition, the City of Jackson has failed to build the promised fire station. It is clear from the projected cost of providing these services, the City is not likely to provide these services in the near future.

*City of Jackson*, 698 So. 2d at 494.

¶29. The infrastructure to provide water and sewage to the area was also poorly developed. The 1994 report of the Livingston Road Water Association appraiser reported the following conditions during the time the area was still within the City of Jackson:

> The Livingston Road Water Association service area infrastructure is not adequate at the present time to support urban growth. The association's existing water well is in very poor condition and many of the water lines are grossly undersized. None of the existing water lines are large enough to support fire hydrants or fire flows necessary for anything other than very low density residential development. Most of the roads in the area are in poor condition and there is no public wastewater service.

A disinterested observer would certainly question the wisdom of spending an alleged $5 million if the above description accurately reflects resulting conditions.

¶30. However, Ridgeland also has had difficulty in fulfilling its promises as evidenced by its delays in extending services to a previously annexed area. The Stokes-Mathew Road area in north Ridgeland was annexed by Ridgeland in 1980, but did not obtain sewer service until 1998. Moreover, the area had inadequate fire protection, as water lines were too small to provide sufficient water flow service to the area.

13

¶31. While both Jackson and Ridgeland have had inadequacies concerning the provision of services to residents, Jackson's are more sever. We hold the chancellor's finding is correct as to this indicium. We find this factor favors annexation by Ridgeland.

### 9. The impact of the annexation upon those who live in or own property in the area proposed for annexation

¶32. With regard to the impact of the annexation on those who own property in the proposed annexation area, "[t]he Court is required to balance the equities by comparing the City's need to expand and any benefits accruing to residents from the annexation with any adverse impact, economic or otherwise, which will probably be experienced by those who live in and own property in the annexation area." *City of Winona*, 879 So. 2d at 988 (*quoting City of Jackson*, 551 So. 2d at 867-68). This Court has also stated "the mere fact that residents in the PAA will have to pay more taxes is insufficient to defeat annexation." *City of Hattiesburg*, 840 So. 2d at 93 (*quoting City of Biloxi,* 744 So. 2d at 284).

¶33. The evidence suggests that citizens in the annexation area will be subject to lower taxes if Ridgeland annexes the area. Although Jackson's water and sewer line installation in the PAA has enhanced area land values, and Jackson put on evidence that an annexation by Jackson would save residents of frame homes up to $700 in fire insurance premiums, the tax rate in Ridgeland of 20.03 mills is far lower than Jackson's tax rate of 53.23 mills. Because Ridgeland's tax rate is less than half of Jackson's tax rate, it provides an obvious advantage for the citizens located in the proposed annexation area. This evidence is sufficient to support the chancellor's finding that if annexed by Jackson, residents would face an adverse economic impact, while if annexed by Ridgeland many residents would experience a

14

positive pecuniary benefit. Although the chancellor did not make a specific finding as to this element, we find this factor supports annexation by Ridgeland.

### 10. Impact of the annexation upon the voting strength of protected minority groups

¶34. The cities of Jackson and Ridgeland both concede that annexation of the area will not have an adverse impact on minority voting strength within their respective cities. This factor favors neither city.

### 11. Benefits of proximity to the municipality

¶35. "This indicium focuses on the issue of whether property owners and other inhabitants of the PAA would be able to enjoy the benefits of the city because of the reasonable proximity to its corporate limits without paying their share of taxes." *City of Hattiesburg,* 840 So. 2d at 93.

¶36. The City of Jackson offered generalized evidence to suggest that property owners in the PAA enjoy the benefits of Jackson without having to pay taxes for those benefits. Although one might argue that the proximity of the PAA to Jackson provides area residents with medical facilities, museums, parks, etc., this argument is without merit. No specific proof was forthcoming and the failure to develop the record to support this issue lies with Jackson. This Court will not go outside the record to assist Jackson where its proof is lacking. *See Estate of Myers v. Myers*, 498 So. 2d 376, 378 (Miss. 1986) (*citing Commercial Credit Equip. Corp. v. Kilgore*, 221 So. 2d 363, 367 (Miss. 1969) (holding that this Court will not go outside the record to find facts)).

15

¶37. On the other hand, the City of Ridgeland does not allege that the residents in the annexed area are not paying their fair share of taxes, but rather argues on appeal that the residents benefit from the fire protection Ridgeland provides. Ridgeland also argues that many of the children in the area attend Ridgeland schools.

¶38. Based on the benefits that Ridgeland is already providing to the PAA, we hold that the chancellor's finding is manifestly wrong as to this element. We find this factor favors annexation by the City of Ridgeland.

### 12. Other factors

¶39. The chancellor considered the important financial and governmental role Jackson plays as the central city in the metropolitan area. This Court has held this fact is neither a super-factor nor an independent dispositive test. *City of Ridgeland*, 651 So. 2d at 562 (*citing City of Jackson v. City of Madison*, 650 So. 2d 490, 506 (Miss. 1995)). This Court has clearly rejected the "Jackson Factor" argument. *Id*.

¶40. The chancellor also noted the cultural, economic, medical, and sport-related amenities Jackson offers, which Ridgeland does not. Conversely, the chancellor also considered the fact that every impacted citizen or property owner who testified expressed a preference for Ridgeland over Jackson. This Court finds it noteworthy that in 1992, when this area was within the City of Jackson, 50 area residents petitioned for the area to be removed from the City of Jackson. Moreover, every impacted citizen or property owner who testified in this case expressed a preference for Ridgeland over Jackson. We find this testimony to be the most compelling. Although the chancellor did not make a specific finding as to this element, we find this factor favors annexation by Ridgeland.

¶41. Based on the analysis of the twelve indicia of reasonableness, we find the evidence weighs in favor of annexation by Ridgeland.

## II. Whether the Chancellor Erred in Modifying Her Original Opinion to Allow the City of Jackson to Annex 220 Business Park.

¶42. After the chancellor issued her first opinion granting the PAA to Ridgeland, Jackson filed a Motion for Reconsideration. In her Order Granting Motion for Reconsideration, the chancellor removed the 220 Business Park from the PAA and awarded the area to Jackson. The chancellor revised her finding as to three indicia of reasonableness (the need to expand, path of growth, and other indicia of reasonableness), holding that the annexation of the business park favored Jackson instead of Ridgeland. The chancellor's revised opinion cites the provision of infrastructure into the 220 Business Park, the existence of transportation routes into the area, the proposed improvements by the City of Jackson along West County Line Road, a comparable development in Lakeover Business Park, and prior services provided by Jackson as a basis for changing her opinion.

¶43. As stated above, the fact finder must consider each of the twelve factors and consider them as a whole when determining the reasonableness of an annexation. *City of Winona*, 879 So. 2d at 972-73. Furthermore, "[this] Court can only reverse the chancery court's findings as to the reasonableness of an annexation if the chancellor's decision is manifestly wrong and is not supported by substantial and credible evidence." *City of Grenada*, 876 So. 2d at 999.

¶44. The chancellor did not provide an analysis in her Order and Supplemental Opinion as to why the same factors, which previously supported an award to Ridgeland, suddenly favored Jackson's request to annex the 220 Business Park. The chancellor simply stated that three

17

factors support Jackson's need to expand, path of growth and other indicia of reasonableness. Moreover, the chancellor's revised opinion wholly failed to consider any of the remaining eight indicia of reasonableness which this Court requires to be considered not in isolation, but rather individually and then collectively. The chancellor's basis for revising her original opinion does not include any new evidence the chancellor did not already receive and consider during the course of the trial.

¶45.    Finally, the chancellor's supplemental opinion on reconsideration grants areas of land which this Court recently allowed to be deannexed.  Worse yet, the opinion splits contiguous tracts of land.  One tract, the Cole Road area, would require Ridgeland to travel through the Jackson in order to provide basic services to that area.  This very question has already been addressed by this Court, and we did not allow such a split to occur.  *Extension of Boundaries v. City of Biloxi*, 361 So. 2d 1372, 1374 (Miss. 1978).

¶46.    By failing to consider all twelve indicia, as well as splitting contiguous tracts of land, the chancellor was manifestly wrong in revising her original opinion. The trial court clearly erred when it removed the 220 Business Park from Ridgeland and awarded it to Jackson.

### CONCLUSION

¶47.    Based on the analysis of the twelve indicia of reasonableness, we find that, with the exception of the Richmond Grove neighborhood, Ridgeland must prevail on the proposed annexation area including the 220 Business Park.  As such, we reverse the chancery court's January 2, 2003, final judgment entered pursuant to its supplemental opinion, and we render judgment reinstating the chancery court's October 1, 2002, judgment entered pursuant to its original opinion.   However, since the October 1, 2002, judgment does not describe the

18

boundaries of the municipalities as altered, Miss. Code Ann. § 21-1-33 (Rev. 2001), we remand this case to the chancery court with directions that it enter an appropriate judgment in compliance with that statute and this opinion.

¶48. **AFFIRMED IN PART; REVERSED AND RENDERED IN PART; AND REMANDED.**

**WALLER AND COBB, P.JJ., EASLEY, CARLSON, DICKINSON AND RANDOLPH, JJ., CONCUR. GRAVES, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION. DIAZ, J., NOT PARTICIPATING.**