# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2006-AN-01431-SCT

*IN THE MATTER OF THE ENLARGING, EXTENDING AND DEFINING THE CORPORATE LIMITS AND BOUNDARIES OF THE CITY OF MERIDIAN, LAUDERDALE COUNTY, MISSISSIPPI: THE TOWN OF MARION, MISSISSIPPI, LAUDERDALE COUNTY, MISSISSIPPI, CITIZENS AGAINST ANNEXATION AND EAGLE POINTE HOMEOWNER'S ASSOCIATION, INC.*

*v.*

*CITY OF MERIDIAN, MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/10/2006 |
| TRIAL JUDGE: | HON. JASON H. FLOYD, JR. |
| COURT FROM WHICH APPEALED: | LAUDERDALE COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANTS: | JAMES L. CARROLL |
| | J. CHADWICK MASK |
| | EILEEN N. SHAFFER |
| | JACOB THOMAS EVANS STUTZMAN |
| ATTORNEY FOR APPELLEE: | JERRY L. MILLS |
| NATURE OF THE CASE: | CIVIL - MUNICIPAL BOUNDARIES & ANNEXATION |
| DISPOSITION: | AFFIRMED - 08/14/2008 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, P.J., GRAVES AND RANDOLPH, JJ.**

**GRAVES, JUSTICE, FOR THE COURT:**

¶1.     This is an appeal from the Lauderdale County Chancery Court's approval of Meridian's annexation of unincorporated territory located within Lauderdale County.

## FACTS AND PROCEDURAL HISTORY

¶2.     On August 27, 2002, the City of Meridian filed a petition in the Chancery Court of Lauderdale County seeking to annex approximately 9.3 square miles of unincorporated territory located within Lauderdale County.  On November 27, 2002, the Town of Marion filed a formal objection to the petition.  On December 13, 2002, Lauderdale County, the Citizens Against Annexation, and the Eagle Pointe Homeowners' Association filed an answer opposing Meridian's annexation petition.  After a bench trial, the trial court granted Meridian all of the territory it sought to annex with the exception of the northernmost portion of Parcel Three, which is immediately to the east of the eastern boundary of Marion.  Thereafter, the Town of Marion and Lauderdale County perfected this appeal.

## DISCUSSION

¶3.     This Court set out the limited standard of review for annexation matters in *In re Extension of Boundaries of City of Hattiesburg*, 840 So. 2d 69 (Miss. 2003).  "The Court can only reverse the chancery court's findings as to the reasonableness of an annexation if the chancellor's decision is manifestly wrong and is not supported by substantial and credible evidence." *Id.* at 81 (citing *In re Enlargement and Extension of Mun. Boundaries of City of Madison v. City of Madison*, 650 So. 2d 490, 494 (Miss. 1995)).  Moreover, in *City of Hattiesburg*, this Court said:

> We also stated "where there is conflicting, credible evidence, we defer to the findings below." *Bassett v. Town of Taylorsville*, 542 So. 2d 918, 921 (Miss. 1989). "Findings of fact made in the context of conflicting, credible evidence may not be disturbed unless this Court can say that from all the evidence that such findings are manifestly wrong, given the weight of the evidence." *Id*. at 921. "We only reverse where the Chancery Court has employed erroneous

2

legal standards or where we are left with a firm and definite conviction that a mistake has been made." *Id*.

*In re Extension of Boundaries of City of Hattiesburg*, 840 So. 2d at 81.

¶4.     This Court has recognized twelve indicia in determining whether a proposed annexation is reasonable:

> (1) the municipality's need to expand, (2) whether the area sought to be annexed is reasonably within a path of growth of the city, (3) potential health hazards from sewage and waste disposal in the annexed areas, (4) the municipality's financial ability to make the improvements and furnish municipal services promised, (5) need for zoning and overall planning in the area, (6) need for municipal services in the area sought to be annexed, (7) whether there are natural barriers between the city and the proposed annexation area, (8) past performance and time element involved in the city's provision of services to its present residents, (9) economic or other impact of the annexation upon those who live in or own property in the proposed annexation area, (10) impact of the annexation upon the voting strength of protected minority groups, (11) whether the property owners and other inhabitants of the areas sought to be annexed have in the past, and in the foreseeable future unless annexed will, because of their reasonable proximity to the corporate limits of the municipality, enjoy economic and social benefits of the municipality without paying their fair share of taxes, and (12) any other factors that may suggest reasonableness.

*Mun. Boundaries v. City of Madison*, 650 So. 2d 490, 494 (Miss. 1995). Further, this Court said:

> These twelve factors are not separate, independent tests which are conclusive as to reasonableness. . . . Rather, these factors are "mere indicia of reasonableness." "The ultimate determination must be whether the annexation is reasonable under the totality of the circumstances." . . . The chancellor was required to determine reasonableness under the totality of the circumstances, employing the applicable indicia of reasonableness merely as an aid to this determination. Restated it is for the chancellor to determine whether the annexation is fair and reasonable and whether Madison carried its burden of showing reasonableness by demonstrating that residents of annexed areas will receive something of value in exchange for their tax dollars.

*Madison*, 650 So. 2d at 494-95.

3

**1. Need to expand.**

¶5.      The Town of Marion and Lauderdale County (hereinafter "Marion") both asserted that Meridian has not demonstrated a need to expand. Specifically, Marion asserted that Meridian's population has been shrinking for decades; that there is no spillover growth attributable to Meridian; Meridian has ample vacant land within its city limits; Meridian does not need to expand its tax base via annexation at this time; the slight traffic increases in Parcel One do not demonstrate a need to expand; and any increases in building permit activity are not attributable to Meridian's growth.

¶6.      Meridian asserted that spillover into the proposed annexation area has occurred and that, particularly to the North, it is nearly impossible to determine the boundary between the City and the proposed annexation area. Meridian conceded that its population has declined but asserted that there is a lack of developable land. Additionally, Meridian adduced evidence: that it has adopted and implemented both planning ordinances and standard building codes; that traffic counts have increased; and that Meridian is the economic hub of the area and has demonstrated a need to maintain and expand its tax base.

¶7.      When determining a city's need for expansion, this Court has considered many factors, including:

> (1) spillover development into the proposed annexation area; (2) the City's internal growth; (3) the City's population growth; (4) the City's need for development land; (5) the need for planning in the annexation area; (6) increased traffic counts; (7) the need to maintain and expand the City's tax base; (8) limitations due to geography and surrounding cities; (9) remaining vacant land within the municipality; (10) environmental influences; (11) the city's need to exercise control over the proposed annexation area; and (12) increased new building permit activity.

*In re Extension of Boundaries of City of Winona*, 879 So. 2d 966, 974 (Miss. 2004).

¶8.    The trial court found that there had been significant spillover development into Parcel One and "that this spillover is caused, in part, by the lack of developable land within the City of Meridian."  However, the court further found:

> The glaring impediment to the City's need for expansion is the continuing loss of population. . . .  This decline can partly be explained by the lack of suitable developable land within the city.  Testimony reveals that the City has experienced tremendous growth in its commercial, office and medical sectors and that this growth results in land absorption.  This coupled with existing development has resulted in the use of almost all of the City's vacant and useable land.
> During the nine years between 1995 and 2004, 742 new residential units were constructed in Meridian.  Over 1,300 new non-residential units [were] constructed during the same time period.  Because of the lack of available, developable land within the existing City of Meridian, an unusual number of additions and conversions of existing buildings occurred during these years.  In excess of 3,900 residential and over 1,300 non-residential conversions occurred during this period. . . .
> Exhibit P-83 shows that the City of Meridian is 62.4% built out and developed and there remains a total vacant unconstrained land of 3,552 acres, which is 12.1%.  A large portion of this 12.1% is scattered, isolated and in small parcels, not conducive to development.
> While the City's population is in a decline, the Court is of the opinion that the City has shown that there does exist a need for expansion.

¶9.    The chancellor's finding that Meridian had shown the existence of a need for expansion was supported by substantial and credible evidence.

**2. Path of growth.**

¶10.    Marion asserted that Parcel One is not within Meridian's path of growth.  In support of this, Marion asserted that: There is no spillover growth attributable to Meridian; much of Parcel One is adjacent to Marion as well as Meridian; Meridian has vast areas of land readily available for expansion; much of Parcel One is not easily accessible from Meridian; Parcel

5

One contains only limited urban development; with regard to geography, the annexation would be detrimental to Marion; the subdivision development that exists is not the result of Meridian's growth; and Meridian has not extended utility services into Parcel One.

¶11. Meridian adduced evidence that the PAA is within a path of growth; that development has spilled over from Meridian into the area sought to be annexed; that the area is adjacent to Meridian; that the areas are interconnected by transportation corridors; that the PAA has experienced significant residential development; and that there is little land left for development in Meridian.

¶12. When determining the indicia of reasonableness for the path of growth, this Court has said that a "city need only show that the areas desired to be annexed are in 'a' path of growth [sic] this does not mean that the area is 'the most urgent or even the city's primary path of growth.'" *Id*. at 977 (citations omitted). Moreover, this Court has set out a number of factors to be considered, such as: (1) spillover development in annexation area; (2) annexation area immediately adjacent to City; (3) limited area available for expansion; (4) interconnection by transportation corridors; (5) increased urban development in annexation area; (6) geography; and (7) subdivision development. *City of Winona*, 879 So. 2d at 977 (citations omitted).

¶13. The trial court found:

> As can be seen by plaintiff's Exhibit P-47, substantial spillover is evident in parcel one and the Sweet Gum Bottom area of parcel two. This spillover reflects the path of growth that exists in these areas.
> Additionally, these PAAs are adjacent to the City of Meridian and are directly connected to the City by transportation corridors such as Highway 39, Highway 11, Highway 45, Interstates 20/59 and other public streets and rail connections. The proposed annexation area has experienced significant

6

residential development that relies on services and facilities available within the City. For example, the PAA is virtually void of any retail commercial base. Residents of the PAA must then seek the goods and services elsewhere, which leads them into Meridian. Although the Town of Marion is an option for residents, the opportunities in Marion range from extremely limited to non-existent. The Court has previously discussed its findings concerning the City's limited area for growth and its need for expansion of its boundaries.

¶14. The chancellor's finding that the PAA is within Meridian's proposed path of growth was supported by substantial and credible evidence.

**3. Health hazards.**

¶15. Marion asserted that there is no evidence of widespread health hazards from septic tank problems in any portion of the PAA. Moreover, Marion asserted that there is substantial evidence that Meridian has had serious problems with its sewer system in recent years.

¶16. Meridian adduced evidence of potential health hazards from the disposal of solid waste in all portions of the PAA. Further, Meridian demonstrated that the soil in the PAA is unsuitable for septic tank usage.

¶17. This Court has set out the following factors in determining whether the potential health hazards are reasonable: "(1) potential health hazards from sewage and waste disposal; (2) a large number of septic tanks in the area; (3) soil conditions which are not conducive to onsite septic systems; (4) open dumping of garbage; and (5) standing water and sewage." *City of Winona*, 879 So. 2d at 979 (citations omitted).

¶18. The trial court found:

> The soil in the entire PAA is classified as severely unsuitable for septic tank usage by the United States Soil Conservation Service. (See Exhibit 75). With the exception of Briarwood Waste Control Area and the two individual locations served by the Town of Marion, the entire PAA area sewage disposal system is by on-site sewage disposal systems.

7

Representatives of the Mississippi State Department of Health testified as to numerous and widespread failures of these on-site disposal systems in the PAA.

Additionally, the topography of the PAA causes the runoff to course through the City of Meridian, thus negatively impacting the City.

The only remedy for this sewage disposal problem is an installation of a central sewage system.

This indicia of reasonableness strongly favors annexation.

¶19. The chancellor's finding that this indicia of reasonableness regarding health hazards favors annexation was supported by substantial and credible evidence.

**4. Financial ability to make improvements and furnish municipal services.**

¶20. Marion asserted that Meridian currently has no capital improvement plan and cannot demonstrate that it has the financial ability to make good on its promises to PAA residents when it has not properly planned for the future of the City's existing residents.

¶21. Meridian set out the proposed services and improvements and the time frame for making them in the ordinance of annexation. Further, Meridian indicated that it has taken additional steps of adopting a much more specific plan of when and how it will provide each service.

¶22. This Court has considered the following factors in determining whether there is reasonable financial ability for the annexation:

(1) present financial condition of the municipality; (2) sales tax revenue history; (3) recent equipment purchases; (4) the financial plan and department reports proposed for implementing and fiscally carrying out the annexation; (5) fund balances; (6) the City's bonding capacity; and (7) expected amount of revenue to be received from taxes in the annexed area.

*City of Winona*, 879 So. 2d at 981-82 (citations omitted).

¶23. The trial court found:

Both of the City's experts, however, have opined, based upon a detailed analysis of the City's operation that the City has the financial ability to perform the promised services and made [sic] the improvements in a timely manner. . . .

These opinions were formed after the consideration of the present and financial condition of the City regarding expenditures and revenue, recent equipment purchases, revenues to be generated from the PAA, expenditures necessary to extend municipal services and facilities into the PAA, and interviews with the City's department heads, City officials and engineers have provided the basic information required to identify equipment and employees necessary to provide municipal level services and facilities to the PAA.

The City's existing and projected financial condition indicates that the City has the ability to provide the level of municipal facilities and services to the PAA. In addition the City has little bonded indebtedness compared to its legal debt capacity. Exhibit P6.

This indicia of reasonableness also favors annexation of the proposed area.

¶24. The chancellor's finding that Meridian has the financial ability to make improvements and provide municipal services was supported by substantial and credible evidence.

**5. Zoning and planning.**

¶25. Marion asserted that Meridian offers little in the way of effective zoning and planning and that Meridian currently has numerous zoning and planning enforcement problems, including trash piles, illegal dumping, unclean roadways, abandoned vehicles, non-conforming structures and numerous subdivision deficiencies.

¶26. Meridian offered evidence of a need for municipal-level planning and zoning within the PAA. Further, Meridian offered evidence that Lauderdale County has no zoning ordinance and that the lack of an ordinance has resulted in incompatible land uses within the PAA. Specifically, Meridian adduced evidence that the "city has in place appropriate municipal level zoning, planning and land use regulations to assure a more coordinated land development pattern as the PAA continues to develop."

9

¶27.    This Court has previously held:

> This Court has upheld an annexation even when a town had no zoning ordinance and presented no evidence of any urban planning. *In re Enlargement and Extension of Corporate Boundaries of the Town of Mantachie*, 685 So. 2d 724, 728 (Miss. 1996).  On the other hand, this Court has upheld an annexation even though a county already had a zoning ordinance. *City of Ridgeland*, 651 So. 2d [548, 559 (Miss. 1995)].

*City of Winona*, 879 So. 2d at 982 (citations omitted).

¶28.    The trial court held:

> The Court therefore finds that while zoning and code enforcement may not be perfect within the City of Meridian, it is adequate and the City can certainly provide zoning and code enforcement much better than is provided to the PAA now.  This indicia of reasonableness also supports annexation.

¶29.    The chancellor's finding that Meridian's zoning and code enforcement supports annexation was supported by substantial and credible evidence.

**6. Need for municipal services.**

¶30.    Marion asserted that the residents of Parcel One do not need additional services. Moreover, Marion maintained specifically that: Meridian has received no requests for water or sewer services; Meridian's plan to provide first-response fire protection would be detrimental to numerous residents of Parcel One because it does not call for additional personnel or equipment and would eliminate an existing fire station; residents of Parcel One are satisfied with the fire protection services they are currently receiving; Meridian's plan to provide police protection would not benefit residents of Parcel One because current law enforcement protection is adequate in the low-crime area and additional tax revenues would be used to address Meridian's existing crime problems; residents of Parcel One currently receive adequate solid-waste collection; and septic-tank usage within Parcel One does not

10

warrant annexation and Meridian has experienced numerous problems with its sewage-treatment system.

¶31.    Meridian maintained that the PAA is in need of municipal services or will be within the foreseeable future. Further, health hazards and the need for municipal sewage services exist in the PAA. Meridian argued that the quality of municipal services can be hampered if standards are not in place at the time of initial development and that "the City has adopted the necessary building codes, land use regulations and development standards to provide for efficient delivery of services." Moreover, Meridian offered that the PAA would benefit from municipal police and fire protection through increased personnel and equipment and through a lower fire rating.

¶32.    In *City of Winona*, this Court said that the factors to be considered in determining whether the need for municipal services is reasonable may include:

> (1) requests for water and sewage services; (2) plan of the City to provide first response fire protection; (3) adequacy of existing fire protection; (4) plan of the City to provide police protection; (5) plan of City to provide increased solid waste collection; (6) use of septic tanks in the proposed annexation area; and (7) population density. [Citations omitted].

*City of Winona*, 879 So. 2d at 984 (quoting *In re Enlargement and Extension of the Boundaries of the City of Macon*, 854 So. 2d 1029, 1041-42 (Miss. 2003)) ("In sparsely populated areas, this Court has found that 'there is less of a need for immediate municipal services' than densely populated areas.'").

¶33.    The trial court found:

> The Court notes that while Lauderdale County currently provides police and fire protection in the PAA, it is by the Sheriff's office which provides approximately .8 sworn officers per one thousand residents while with

11

annexation the City would provide approximately 2.6 sworn officers per one thousand residents. Exhibit P-62. The City is also equipped with radar and can more effectively control traffic in the PAA.

Municipal fire protection is another City service which would be highly beneficial to the PAA. The PAA is served by several fire districts that are manned by volunteer firemen. These fire districts have fire ratings from Class 6 to Class 9. One area that contains Northeast Elementary School is in no fire district and therefore has a fire rating of Class 10.

The City of Meridian has a Class 4 rating and upon annexation many properties in the PAA would immediately gain a reduction in their fire insurance rates. (See Exhibit P-38, 39, 40 and 41).

The Court has already considered the need for sewage collection and treatment in the proposed annexation area. This need is due to the soil not being conducive to on-site septic tank usage and the lack of sewage collection and treatment, except for the limited areas served by Briarwood Waste Control and Trust Developers, Inc. and the City of Marion.

For the above stated reasons, the Court finds that this indicia of reasonableness favors annexation.

¶34. The chancellor's finding that Meridian has demonstrated a need for municipal services in the PAA was supported by substantial and credible evidence.

**7. Natural barriers.**

¶35. Marion asserted that it serves as a barrier between Parcel One and Meridian. Moreover, Meridian's base map demonstrates that residents of Parcel One currently must travel through Marion in order to get to portions of Meridian. Marion asserted that it is logistically nonsensical for Meridian to have another municipality separating its residents and that the chancellor was manifestly wrong in his determination that there are no natural barriers.

¶36. No evidence of natural barriers was presented. The trial court offered no analysis, but merely found "that the evidence shows that there are no natural barriers to indicate the unreasonableness of this proposed annexation." There was no evidence to the contrary.

12

¶37. The chancellor's finding that no natural barriers exist was supported by substantial and credible evidence.

**8. Past performance.**

¶38. Marion asserted that Meridian's 2003 Comprehensive Plan provides evidence of poor past performance pursuant to *In re Enlargement and Extension of the Municipal Boundaries of the City of Jackson*, 912 So. 2d 961, 969-70 (Miss. 2005). Further, Marion asserted that evidence in the form of testimony of Don Starks and Sadie Martin was introduced establishing Meridian's failure to provide services to annexed residents in a timely manner.

¶39. Meridian provided sufficient evidence of the high level of service provided to the areas last annexed. Those services include municipal trash and garbage collection, street lighting, parks and recreational services, water, sanitary sewer, streets and street maintenance, drainage, right-of-way maintenance, animal control, police protection, fire protection, and the adoption of various codes and ordinances.

¶40. The trial court found:

> While no City is ever perfect, the record supports Meridian's claim of good past performance within the existing City. The record shows that Meridian provides municipal level trash and garbage collection, street lighting, parks and recreation services, water, sanitary sewer, streets and street maintenance, drainage, right of way maintenance, animal control, police protection and fire protection within the existing City. In addition, Meridian has adopted and implemented zoning ordinances, subdivision regulations, building and construction codes and life safety codes to its existing citizens. Exhibit P17, 78, 89.
> This indicia weighs in favor of annexation.

13

¶41. The chancellor's finding that the record supports Meridian's claim of good past performance was supported by substantial and credible evidence.

**9. Economic or other impact on residents or property owners.**

¶42. Marion asserted that the annexation would place an unfair tax burden on residents of Parcel One because those residents generally have higher incomes than others in the Meridian area and they already provide for themselves any municipal-type service needed.

¶43. Meridian countered that the residents and property owners of the PAA would receive valuable municipal services for any tax dollars paid and that this factor favors the reasonableness of the proposed annexation.

¶44. "The mere fact that residents in the PAA will have to pay more taxes is insufficient to defeat annexation." *City of Winona*, 879 So. 2d at 988 (citations omitted). Moreover:

> The Court is required to balance the equities by comparing the City's need to expand and any benefits accruing to residents from the annexation with any adverse impact, economic or otherwise, which will probably be experienced by those who live in and own property in the annexation area. The mere fact that residents and landowners will have to start paying city property taxes is not sufficient to show unreasonableness.

*Id.* (citations omitted).

¶45. The trial court found:

> The evidence reveals that the residents and property owners in the PAA will receive valuable services in return for the additional taxes they will pay. These service [sic] and accruing benefits are lengthy but they include:
> - enhanced ordinances including zoning, life, safety and building codes;
> - enhanced police and fire protection;
> - reduced fire rating;
> - potential reduction in home owners insurance premiums;
> - sewage collection and treatment;
> - street lights;
> - enhanced traffic control and signage;

14

> - enhanced pest control;
> - enhanced water supply and distribution;
> - enhanced garbage and trash collection service;
> - reduction of county taxes through the elimination of special levies for fire protection and garbage collection; and
> - enhanced street construction and maintenance.
>
> The citizens and property owners will receive substantial value for the additional costs, which would be associated with being annexed by the City of Meridian.
>
> These factor [sic] favor the reasonableness of the proposed annexation.

¶46. The chancellor's finding that residents and property owners in the PAA will receive valuable services in return for the additional taxes they will pay was supported by substantial and credible evidence.

**10. Impact on minority voting.**

¶47. Marion asserted that the annexation would negatively impact the voting strength of a protected minority because 84.4 percent of the residents of Parcel One are white.

¶48. Meridian conceded that the annexation would dilute the minority voting strength from 44 percent white, 54.4 percent African American, and 1.6 percent other to 45.4 percent white, 53 percent African American and 1.6 percent other. However, Meridian cites *City of Richmond, Virginia v. U.S.*, 422 U.S. 358, 95 S.Ct. 2296, 45 L. Ed. 2d 245 (1975), for the proposition that such diminution is not improper. Moreover, Meridian maintained that it had configured the proposed annexation so that no potential minority voters within the path of growth were excluded and that it had clearly established the non-discriminatory purposes of the annexation.

¶49. The trial court found:

> The population of Meridian was 44.0% white, 54.4% African American and 1.6% other in 2000. The voting age population of the City of Meridian is

15

50.2% white, 48.2% African American and 1.5% other according to the 2000 census. The area sought to be annexed is 84.4% white, 13.9% African American and 1.7% other. The resulting City of Meridian would, upon approval of the proposed annexation be 45.4% white, 53.0% African American and 1.6% other. Exhibit P21. This diminution of the protected minority is not necessarily impermissible.

See *City of Richmond, Virginia v. U.S.* 422 U.S. 358, 95 S.Ct. 2296 (U.S.Dist.Col. 1975).

So long as the City of Meridian has established that the purpose of this annexation is not discriminatory, that there are now objectively verifiably legitimate reasons for the annexation and that there are wards that can be used to preserve voting strength of the protective [sic] minorities then the annexation is permissible. The City of Meridian has established the non-discriminatory purposes of this annexation and therefore annexation is reasonable under this indicia.

¶50. The chancellor's finding that Meridian had established the non-discriminatory purposes of the annexation was supported by substantial and credible evidence.

**11. Enjoyment of economic and social benefits of municipality without paying fair share of taxes.**

¶51. Marion asserted that any benefit arguably received by residents of Parcel One is clearly negated by the fact that residents contribute taxes to Meridian when they do business there and by the fact that the residents pay county taxes.

¶52. Meridian averred that residents of the PAA benefit from their proximity to the City of Meridian and regularly use city streets, shop within the city, are protected by police and fire departments while in the city, and use many city services.

¶53. The trial court found:

This indicia places upon the Court the task of making a subjective evaluation of what is considered a fair share of the taxes. The Court is of the opinion that so long as the property owners and other inhabitants of the area pay the taxes imposed upon them by the authorities that the payment of those taxes would be considered their fair share. The Court does recognize, however, that the property owners and residents in the area sought to be

16

annexed are located in the area because of their proximity to the City of Meridian. They shop in Meridian, they go to church in Meridian, they buy their clothes in Meridian, and they eat their lunches in Meridian. Without the City of Meridian, it is doubtful that the majority of the residents would be living where they are now. The Court therefore finds that this indicia is reasonable.

¶54. The chancellor's finding that the residents of the PAA benefit from Meridian without paying taxes was supported by substantial and credible evidence.

**12. Any other factors that suggest reasonableness.**

¶55. Marion asserted that numerous other factors show that annexation by Meridian is not reasonable under the totality of the circumstances. Specifically, Marion asserted that the annexation is unwanted and will provide little value. Moreover, evidence was offered to establish that the annexation is not vital to Meridian's future and will be detrimental to Marion, in part by blocking Marion's path of growth to the west, northwest and south.

¶56. Meridian asserted that another factor indicating the reasonableness of the proposed annexation is the city's position as a regional trade and employment center.

¶57. The trial court found no factors other than those discussed herein which suggest reasonableness. We find that the chancellor's finding is not erroneous.

CONCLUSION

¶58. We find that the chancellor's findings of reasonableness as to the annexation of the areas within the PAA were supported by substantial and credible evidence. Therefore, the trial court should be affirmed.

**¶59. AFFIRMED.**

17

**SMITH, C.J., WALLER and DIAZ, P.JJ., CARLSON, GRAVES, DICKINSON, RANDOLPH AND LAMAR, JJ. CONCUR. EASLEY, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**